# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SCOTT D. LEMOINE, ET AL                          CIVIL ACTION

VERSUS                                           NO. 11-1377

ELIZABETH P. WOLFE, ET AL                        SECTION: "C"(3)

## ORDER AND REASONS

This matter comes before the Court on (1) Motion for Summary Judgment filed by David

Wolfe, and (2) Motion for Summary Judgment filed by Elizabeth P. Wolfe. Rec. Docs. 44, 51.

Plaintiff Scott D. Lemoine (hereafter "Lemoine") filed this complaint alleging claims for

damages pursuant to 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth

Amendments to the United States Constitution, Article I §§ 2, 3 and 20 of the Louisiana

Constitution of 1974 and under Louisiana law for torts of false arrest and malicious prosecution.

Rec. Doc. 1. Plaintiff Beverly P. Lemoine filed this claim alleging loss of consortium under

federal and state law. *Id.*   Having considered the record, the memoranda of counsel and the law,

the Court has determined that summary judgment is GRANTED for the following reasons.


## I. BACKGROUND

Between January 2009 and October 2009, Lemoine posted on his friend Daniel Hoover's

facebook page information about the domestic litigation between Hoover and his ex-wife Kelly

Wolfe. Rec. Doc. 1.  Additionally, Lemoine posted on an Action 17 News website/message

board. *Id.* His postings included allegations concerning Judge Elizabeth Wolfe's alleged manipulation of the judicial system to achieve the goals of her future daughter-in-law, Kelly. *Id.* They also included statements critical of Judge Wolfe, Kelly, and Kelly's friends and family. *Id.* In November 2009, Lemoine alleges that Judge Wolfe contacted Detective Toby Aguillard. Rec. Doc. 1. Judge Wolfe admits that she contacted Detective Aguillard and claims it was in response to his request to arrange an interview. Rec. Doc. 5. After complaints from Daniel Hoover's sister, Lori Barrient, Kelly Wolfe and Judge Wolfe, Detective Toby Aguillard obtained an arrest warrant for Lemoine from a Hammond City Court judge on December 21, 2009 for a misdemeanor charge of cyberstalking. Rec. Doc. 1. On the same date, Detective Aguillard arrested Lemoine at the Hammond Substation. *Id.* Lemoine was transported to the Tangipahoa Parish Jail. *Id.* Lemoine had been previously acquitted on a federal criminal charge in the Eastern District of Louisiana following being found not guilty by reason of insanity. *Id.* He had been released on conditional discharge, and therefore, was under the supervision of a federal probation officer when he was arrested for cyberstalking. *Id.* Despite being notified, Lemoine's probation officer did not initially revoke his conditional discharge. *Id.*

It is undisputed that immediately after arresting Lemoine on the cyberstalking charge, Detective Aguillard made a telephone call to defendant David Wolfe. *Id*; Rec. Doc. 6. However, it is unclear what was discussed during the telephone conversation beyond the fact that Lemoine had been arrested. Rec. Docs. 1, 6. Lemoine alleges that Detective Aguillard advised David Wolfe that bail would not be high because the charge was a misdemeanor and suggested he have

his wife make a phone call to set bail higher. Rec. Doc. 1.  Lemoine further contends that Detective Aguillard spoke with Judge Wolfe on his cell phone about the arrest and later called David Wolfe to tell him the name of the duty judge. Rec. Doc. 1.  David Wolfe and Judge Wolfe deny that Detective Aguillard spoke with Judge Wolfe, and claim that Aguillard may have called David Wolfe back, but it was not to tell him the name of the duty judge. Rec. Docs. 5, 6.

Lemoine alleges that his bail was initially set at $25,000 but increased to $100,000 on December 22, 2009. Rec. Doc. 1.  An additional requirement of his release was that he wear a GPS tracking bracelet. Rec. Doc. 1.  The duty judge, Robert Morrison, was responsible for setting and/or increasing Lemoine's bail. *Id.*  Lemoine alleges that Judge Wolfe unduly influenced the duty judge's decision but gives no further explanation. *Id.*  Lemoine was not released from state custody until January 8, 2010 because no GPS tracking bracelet was available. *Id.*

While in the Tangipahoa Parish Jail, Lemoine was accused by inmate defendant Brian Register of soliciting him to murder Judge Wolfe. *Id.*  Register and another inmate, Xavier Thompson, sent a note to the administration of the jail making this allegation. *Id.*  After interviews of the inmates and Lemoine, Lemoine was arrested for solicitation of murder on December 23, 2009. *Id.* Lemoine was held in the lockdown unit at the Tangipahoa Parish Jail until January 8, 2009 when his federal probation officer filed a warrant for the revocation of his conditional discharge, and he was taken into federal custody. *Id.*

On January 5, 2010, Register wrote a letter to Judge Wolfe asking her for help because he

had "set up" Lemoine. *Id.* Lemoine alleges that Judge Wolfe sent an individual to talk to Register in response to the letter and the individual promised Register help and/or legal advice at the request of Judge Wolfe. *Id.* Register wrote to Judge Wolfe again on January 11, 2010, thanking Judge Wolfe for helping him with his bail. *Id.* Judge Wolfe admits that she received correspondence from Register, but claims that she forwarded the correspondence to the Public Defender's Office and the District Attorney's Office and responded to him in no way. Rec. Doc. 5. Lemoine alleges that as a result of this, Register's manufacturing of methamphetamine charge was dropped on March 10, 2010, removing Register's $100,000 bond obligation and enabling him to make bail on a burglary charge and be released from custody shortly thereafter. Rec. Doc. 1.

Lemoine was formally charged by information with cyberstalking and solicitation of murder in the 21st Judicial District Court on March 12, 2010. *Id.* When Lemoine's counsel filed a motion for discovery in the cyberstalking case, Judge Wolfe, on March 29, 2010, signed the order setting a hearing on the motion. Rec. Doc. 1. Judge Wolfe claims that she signed this order in error. Rec. Doc. 5.

On August 24, 2010, a probable cause hearing was held on the solicitation of murder charge, and the presiding judge found that there was no probable cause to believe Lemoine committed the charged offense. Rec. Doc. 1. The presiding judge also reduced Lemoine's bail on the cyberstalking charge to $25,000 with no GPS bracelet condition. The solicitation of murder charge was dismissed prior to trial on September 14, 2010. *Id.* The cyberstalking charge

was dismissed on September 15, 2010. *Id.* Lemoine was released from federal custody on

October 13, 2010. *Id.* His conditional discharge, which would have expired in October 2010,

was continued indefinitely. *Id.*

## II. LAW & ANALYSIS

### A. Standard of Review for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states: "The Court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56. When considering

whether any genuine issues of material fact exists, courts view the evidence and inferences

drawn from that evidence in the light most favorable to the non-moving party. *United States ex*

*re. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 173 (5th

Cir. 2004) (*citing Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Wyatt v. Hunt*

*Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986)). A factual dispute precludes

summary judgment if the evidence would permit a reasonable jury to return a verdict for the

nonmoving party. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001).

The party moving for summary judgment bears the initial burden of "informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (*citing Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the nonmoving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1996). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

**B. Federal Conspiracy Claims**

To establish a conspiracy to violate Lemoine's Eight Amendment right to reasonable bail by causing the increase in Lemoine's bail to an unreasonable amount, a plaintiff must prove that a civil conspiracy took place. The elements of a civil conspiracy under § 1983 include: (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right. *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999) (*citing Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

Here, the Court does not find that David Wolfe or Judge Elizabeth Wolfe's actions fulfill the elements of a conspiracy. The plaintiff has failed to establish that the defendants acted in

concert with the specific intent to violate a right protected by § 1983.  It was duty Judge Robert Morrison who set the amount of bail for Lemoine on December 22, 2010. Rec Doc. 1.  Lemoine has not provided evidence that Judge Morrison was influenced by Judge or David Wolfe in initially setting Lemoine's bail or in changing it. Rec. Doc. 72, Exh. 2, Depo. Morrison, p.20, ln. 20-22.  Lemoine established that Detective Aguillard called David Wolfe after Lemoine was arrested. Rec. Doc. 67. In the transcript of their conversation, Detective Aguillard directly asks David Wolfe if his wife could make a call for something. Rec. Doc. 68.  The recording does not reveal either what Detective Aguillard asked David Wolfe to have his wife make a call about, or that the request was conveyed to Judge Wolfe. *Id.*

Detective Aguillard believes he may have spoken with David Wolfe again and David Wolfe concedes this is true.  Rec. Doc. 72.  However, Lemoine has not put forth any evidence that David Wolfe conspired with Judge Morrison or anyone else to set the amount of bail.  In his deposition, Aguillard responds that he "suppose[s]" that he called David back and that he "probably called David to let him know" that Judge Morrison was the duty judge. Rec. Doc. 72, Exh. 2, depo. Aguillard, pp. 308-09.  These assertions are unsubstantiated and conclusory, and therefore are not competent evidence. *See Hopper*, 16 F.3d 92; *Lujan*, 497 U.S. at 871-73.  Even if Lemoine proves that there are material facts at issue as to whether Aguillard called David Wolfe with the name of the duty judge, he has not provided evidence to demonstrate that there was a conspiracy.  He has not established that there was any discussion between 1) David Wolfe and Judge Wolfe about the setting of bail, or 2) Judge Wolfe or David Wolfe and Judge

7

Morrison. *See* Rec. Doc. 72, Exh. 3, depo. Aguillard, p. 22. Although Lemoine has demonstrated that Judge Morrison set his bail higher than it usually would be under the schedule, he has not established that this was in response to direct influence or a conspiracy with David Wolfe or Judge Wolfe. *Id*. at 20.

Since the Court finds that David Wolfe and Judge Wolfe did not conspire to deny Lemoine reasonable bail, it finds that they are not responsible for any other alleged violations of Lemoine's constitutional rights that could have arisen out of a denial of reasonable bail.

The Court also finds that Judge Wolfe did not conspire to violate Lemoine's Fourth Amendment right to be free from the unreasonable seizure of his person, or Fourteenth Amendment right to due process by causing his arrest and malicious prosecution on the cyberstalking charge. Additionally, the Court finds that Judge Wolfe did not conspire with Detective Aguillard to violate Lemoine's First Amendment right to freedom of speech. The Court also finds that Judge Wolfe did not conspire to violate Lemoine's Fourth Amendment right to be free from the unreasonable seizure of his person, or Lemoine's Fourteenth Amendment right to due process by causing his false arrest, malicious prosecution, and the continuation of the malicious prosecution on the solicitation of murder charge.

All of these claims hinge on Judge Wolfe's influence over the detective that arrested Lemoine. Beyond an interview that Judge Wolfe had with Detective Aguillard in November 2009 about the cyberstalking charge, Lemoine has not produced evidence that Judge Wolfe had any contact with the detective or anyone prosecuting Lemoine. Rec. Doc. 1. Lemoine has only

established that Detective Aguillard met with Judge Wolfe in her capacity as the victim of his

alleged cyberstalking. Rec. Doc. 5, 65. Detective Aguillard's deposition does not state that he

arrested, prosecuted or imprisoned Lemoine as a result of his conversation with Judge Wolfe.

Rec. Doc. 68, Ex. 1, depo. Aguillard.  Aguillard states that he discussed the alleged harassment

with Judge Wolfe and not probable cause to arrest Lemoine. *Id.*  The mere fact that Aguillard

discussed the arrest with Elizabeth Wolfe, a sitting judge and alleged victim, does not mean that

she conspired with him in arresting or imprisoning Lemoine.

Before arresting Lemoine on the cyberstalking charge, Detective Aguillard obtained an

arrest warrant from a Hammond City Court judge. Rec. Doc. 1.  When facts demonstrating

probable cause for an arrest are placed before an independent intermediary, the independent

intermediary's decision breaks the chain of causation for false arrest. *Jennings v. Patton*, 644

F.3d 297, 300 (5th Cir. 2011).  Judge Wolfe did not conspire to violate Lemoine's constitutional

rights because the warrant for his arrest breaks the chain of causation between any influence she

could have had on his arrest and the incarceration and prosecution for cyberstalking and

solicitation of murder that followed it. Any claims against Judge Wolfe for signing the order

setting a hearing on Lemoine's motion for discovery in the cyberstalking case are barred by the

Eleventh Amendment under judicial immunity. *Pennhurst State Sch. & Hosp. V. Halderman*,

465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67, 102-03, 124-26 (1984).

### C. Acting Under Color of State Law

Plaintiffs do not dispute that if there was no conspiracy, defendant David Wolfe could not

have been acting "under color of state law." Rec. Doc. 67 at 15. With regard to David Wolfe's actions, plaintiff concedes that David Wolfe is a private person who does not occupy a position that can be considered an actor "under color of state law." *Id.* Lemoine alleges that David Wolfe can be considered a state actor under color of state law if he engaged in a conspiracy with a state actor. *Id.* Plaintiff cites to *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Adickes*, the Court found that there was an issue of material fact as to whether there had been a conspiracy. *Adickes*, 398 U.S. at 158-59. Plaintiff also cites to *Cinel v. Connick*, where the Court found no conspiracy between private actors and state actors. 15 F.3d 1338, 1343 (5th Cir. 1994). Similarly to *Cinel*, here, the Court finds there was no conspiracy, and hence defendant David Wolfe did not act under color of state law. The acts of a private party are not actionable under § 1983.

### D. Louisiana Tort Law Claims

The Court finds that Judge Wolfe is not liable to Lemoine for the Louisiana torts of false arrest and malicious prosecution based upon the cyberstalking or solicitation of murder charges. As already noted, Judge Wolfe is not liable for false arrest under Louisiana law because the independent actions of the police break the chain of causation between a complaint and the defendant's arrest. *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669 (La. 2006).

Under Louisiana law, an action for malicious prosecution requires the following elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant

in the original proceeding; (3) its bonafide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff. *O'Connor v. Hammond Police Department*, 439 So. 2d 558, 561 (La. App. 1st Cir. 1983). In particular, Judge Wolfe's actions with regard to malicious prosecution did not meet the second element ("(2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding.") The defendants Court does not reach the issue of whether there was a "bona fide termination in favor of the present plaintiff" because it finds that the second element has not been fulfilled. Lemoine has not demonstrated that Judge Wolfe caused his prosecution.

In granting summary judgement in favor of the defendants by finding there is no question of material fact that Lemoine's rights were not violated under § 1983 or Louisiana tort law, the Court also grants summary judgment in favor of the defendants and against Beverly Lemoine. Without a denial of her husband's rights, she has no claim for loss of consortium of her husband under federal or state law.

Accordingly,

IT IS ORDERED that defendant David Wolfe's motion for summary judgment is GRANTED. Rec. Doc. 44.

IT IS FURTHER ORDERED that defendant Judge Elizabeth Wolfe's motion for summary judgment is GRANTED. Rec. Doc. 51.

Considering the Court having been advised that a partial settlement was reached, Rec. Doc. 85; accordingly,

IT IS FURTHER ORDERED that the motion for summary judgment filed by Toby Aguillard, Daniel H. Edwards and Ray Lentz is hereby DISMISSED AS MOOT. Rec. Doc. 52.

New Orleans, Louisiana, this 3rd day of December 2012.

Helen G. Berrigan
U.S. District Judge